UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
1:05-CV-35-R

JOHN S. LEWIS, III
PLAINTIFF

v.

RELIANCE STANDARD LIFE INSURANCE COMPANY, ET AL.
DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the Court on Defendants' Motion for Summary Judgment (Docket #15). The Plaintiff has responded (Docket #17). This matter is now ripe for adjudication. For the reasons that follow, the Defendants' Motion for Summary Judgment is **GRANTED.**

## BACKGROUND

The Plaintiff, John S. Lewis, III ("Lewis"), brought this claim against the Defendants, Reliance Standard Life Insurance Company, et al. ("Reliance"), because of the denial of his long term disability (policy # LSC 101591) benefits issued by Reliance to Lewis' former employer, Summa Technology, Inc. ("Summa"), as part of its employee welfare benefit plan. Lewis worked as a Laser Machinist. The claims in this matter are governed by 29 U.S.C. § 1001, known as the Employee Retirement Income Security Act (ERISA) of 1974.

After working for his employer for a term of close to ten years, Lewis began to experience shortness of breath and joint pain. Upon developing these symptoms Lewis sought evaluations from several physicians, with the end result being that he would be limited to performing light duty work due to his conditions, which included a respiratory ailment that

limited his ability to stand or sit. The Plaintiff had also been declared disabled by the Social Security Administration, and is presently receiving benefits for the same symptoms.

Lewis submitted a claim for benefits on January 8, 2003, stating that he could not perform his job duties. Initially, on March 12, 2003, Reliance awarded LTD benefits to Lewis, and informed him that he would have to periodically provide medical updates in order to continue to receive his benefits. When Reliance started to review Lewis' eligibility, they received medical reports from Dr. Antara Mallampalli, M.D., who indicated that during a December 2002 examination Lewis' symptoms were disproportionate to findings on the pulmonary function testing and chest x-rays, plus a bronchoscopy ruled out heavy metal exposure. In January 2003 Dr. James Nuss, M.D., in his physician's statement, determined that Lewis had the ability to perform light duty work, which included the ability to stand, sit and walk for 3-5 hours/day and lift up to 20 pounds. In addition, in February 2003 Reliance's medical examiner noted that even with "elevated" metal levels in Lewis' blood, the examiner concluded that those did not result in an impairment.

Under the Department of Labor's Dictionary of Occupational Titles (DOT) Lewis' occupation as a Laser Beam Machine Operator falls under the category of a light duty occupation, which requires the ability to lift or carry 20 pounds occasionally. However, Lewis has claimed that the Defendants erred when they did not investigate his specific job, but instead used his regular occupation as mentioned in the policy. Reliance did attempt to investigate the specific job of the Plaintiff, however, Summa refused the request of the Defendants to conduct an on-site visit.

On March 26, 2003, Reliance decided that Lewis was no longer eligible for LTD

benefits, arguing that he could not demonstrate total disability.  In September 2003, Lewis appealed the decision by Reliance.  Included in the appeal was a toxilogical analysis performed by a Dr. Staninger, indicating that Lewis had likely been exposed to chemicals and metals at Summa.  However, Dr. Staninger never examined Lewis in person, but rather he based his opinions of possible symptoms of exposure on medical reports he had examined.  On October 16, 2003, Lewis saw Dr. Warren Bilkey, M.D., in order to have Dr. Bilkey determine whether there were any effects on Lewis due to metal and fume exposure.  In examining Lewis, Dr. Bilkey concluded that there were no significant toxic exposures or abnormal effects.  In addition, Dr. Bilkey determined that Lewis was capable of sedentary to light activity with a maximum lifting of 15 pounds.  The following January 1, 2004, Reliance's medical department again reviewed all of the medical records of Lewis, and once again decided that Lewis was capable of performing the light duties of his "regular occupation" as set forth by the Department of Labor's DOT description.  Reliance informed Lewis of this decision on April 20, 2004.  At that time the Plaintiff filed this claim against the Defendants.

## STANDARD

In *Wilkins v. Baptist Healthcare Systems, Inc.*, the Sixth Circuit held that § 502(a) actions were not subject to Federal Rule of Civil Procedure 56 motions.  150 F.3d 609, 617 (6th Cir. 1998).  Instead, this Court must conduct a *de novo* review based on the administrative record; it must render findings of fact and conclusions of law, *id.* at 619, unless the benefit plan gives the administrator discretion to determine eligibility or construe the plan's terms, in which case an arbitrary and capricious standard applies.  *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  Here, the parties agree that the Plan grants its administrators such discretion.

When applying an arbitrary and capricious standard of review, this Court must determine whether "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." *Bartling v. Fruehauf Corp.*, 29 F.3d 1062,1071 (6th Cir. 1994) (citing *Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989)). If such an explanation is available, this Court must respect the decision of the claims administrator and uphold it. *Id.* In evaluating those decisions, this Court must consider only the evidence before the administrator at the time, *Daniel v. Eaton Corp.*, 839 F.2d 263, 266-67 (6th Cir. 1988), and must account for potential conflicts of interest. *Kulkarni v. Metropolitan Life Ins. Co.*, 187 F. Supp.2d 724, 727 (W.D. Ky. 2001) (citing *Firestone Tire and Rubber Co., v. Bruch*, 489 U.S. 101, 115 (1989); *Peruzzi v. Summa Medical Plan*, 137 F.3d 431, 433 (6th Cir.1998)).

## DISCUSSION

Reliance asserts that their decision to suspend compensation was not arbitrary and capricious because Lewis was not totally disabled from his "regular occupation" as defined by the DOT list. Lewis counters by arguing that the Court should look at his specific job, but further asserts that regardless of how one interprets the definition of "regular occupation," Lewis cannot perform his regular occupation, and for purposes of the policy Lewis is disabled under any standard. In addition, the Plaintiff argues that the Court should take into consideration the fact that Lewis receives social security disability benefits in making a determination, while Reliance asserts that the social security benefits received by Lewis are not binding on the Court. The Court will address each of these issues separately.

### *Was the decision arbitrary and capricious?*

4

The policy in question in the instant matter granted discretionary review authority to Reliance, as the language explicitly stated that "[t]he claims review fiduciary has the discretionary authority to interpret the Plan and insurance policy and to determine eligibility for benefits." (Policy at AR124).  In deciding whether or not the decision by Reliance in denying the benefits to Lewis was arbitrary and capricious, the Court must determine if Reliance should have analyzed Lewis' claim under the DOT definition of "regular occupation" for a Laser Machine Beam Operator or should have looked at his specific job responsibilities.  After determining what occupational duties, be it regular or specific, apply to this matter, the Court must then examine the facts and records from the medical reports to see if Lewis qualified for disability under the plan.

<u>Regular or Specific Occupation</u>

Reliance asserts that because the policy states that a disability constitutes an employees's inability to perform the duties of his "regular occupation," that definition should apply to the instant matter when determining if the decision made by the Defendants was arbitrary and capricious.  As mentioned *supra*, in making their decision Reliance used the definition of a Laser Machine Beam Operator provided by the Department of Labor's DOT list.  Reliance offers case law from the Sixth Circuit supporting their choice to use the DOT list.

In *Schmidlkofer v. Directory Distributing, Associates, Inc. et al.*, an unpublished opinion, the Sixth Circuit Court of Appeals, in overturning the decision by the federal district court, explicitly held that the administrator could use the regular occupation listing instead of a specific job description in its decision to deny benefits to the claimant. *Schmidlkofer v. Directory Distributing Associates, Inc. et al.*, 107 Fed. Appx. 631, 633-34 (6th Cir. 2004).  The Court in

*Schmidlkofer* stated that "the district court was obligated to uphold the plan administrator's interpretation so long as the interpretation is rational in light of the plain meaning words of the policy." *Id.* at 633.[1]  The Court went on to cite other cases and opinions that support Reliance's claim that an administrator's decision to analyze the claim under a "regular occupation" standard, rather than using a specific job standard:

> Many courts have upheld a plan administrator's interpretation of "regular occupation" as meaning a general occupation rather than a particular position with a particular employer. *See, e.g., Ehrensaft v. Dimension Works Inc. Long Term Disability Plan*, 120 F.Supp.2d 1253, 1259 (D.Nev.2000) ("This Court finds that the term, 'occupation,' is a general description, not a specific one.... A person may not be able to perform a specific job assignment, but still be able to perform the duties generally understood to be part of his or her 'occupation.' For example, a secretary is not disabled from his or her 'occupation' just because he or she cannot also perform additional tasks assigned by an employer, such as moving furniture or lifting heavy objects."); *Dionida v. Reliance Standard Life Ins. Co.*, 50 F.Supp.2d 934, 939 (N.D.Cal., 1999) ("The term 'regular occupation' may be fairly construed to mean 'a position of the same general character as the insured's previous job, with similar duties and training requirements." ' (quoting *Dawes v. First Unum Life Ins., Co.*, 851 F.Supp. 118, 122 (S.D.N.Y.1994))); *Hanser v. Ralston Purina Co.*, 821 F.Supp. 473, 478 (E.D.Mich.1993) ("The court finds that defendant's interpretation of the terms 'regular occupation' as meaning the type of work which a covered employee is trained to perform rather than the specific job at which the employee was working when he became ill, is a rational interpretation supported by the plain meaning of the words." (citation omitted)); cf. *Valeck v. Watson Wyatt & Co.*, 266 F.Supp.2d 610, 620-21 (E.D.Mich.2003) (upholding as not arbitrary or capricious the interpretation of both "regular job" and "regular occupation" as "the kind of work [insured] did" rather than the "specific job in the specific office and with the specific supervisor and co-workers with whom she worked"). We thus conclude that Reliance Standard's interpretation of "regular occupation" as meaning Schmidlkofer's occupation as a branch manager, rather than her former position at Directory Distributing, is rational in light of the policy's provisions.

*Id.* at 633-634.  In addition, the Court also held that the administrator could rely on the DOT list to

---

[1] *See Miller v. Met Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991), stating "An ERISA plan administrator's denial of benefits is not arbitrary and capricious as long as it is rational in light of the plan's provisions."

determine the job responsibilities of the claimant. *Id.* at 632.

Lewis, in his response to Defendants' Motion for Summary Judgment, does not address the case law offered by Reliance, nor does he cite any contrary authority, but instead argues that the DOT list used by Reliance did not include all of the responsibilities of Lewis, and therefore could not qualify as his regular occupation because Lewis' occupation at Summa had him cutting things with a laser that would expose him to fumes. Reliance had submitted that under the DOT description for a Laser Machine Beam Operator, exposure to fumes was not part of the regular occupation description. Lewis argues that because part of the "regular occupation" for a Laser Machine Beam Operator was not included in the DOT description, Reliance should have used his specific job.

Though Reliance did attempt an on-site investigation, it still did not have to use the specific job description as asserted by Lewis in evaluating his claim for benefits. In the instant matter, similar to what the Court in *Schmidlkofer* held, all Reliance had to do here was make a rational interpretation of the policy using the plain meaning of the language and then apply it to the facts and medical records of the claimant, which they did in initially granting then denying the benefits to Lewis. As mentioned *supra*, the policy clearly states that the term "regular occupation" should have been used when Reliance evaluated Lewis' claim. Further, Reliance used the DOT list in order to determine the material duties of Lewis after Summa refused to permit Reliance to conduct an on-site inspection, similar to the administrator in *Schmidlkofer*, where the Court held that using the DOT list was appropriate to define the duties under the term "regular occupation" of the policy. Reliance then applied the medical reports to the duties on the DOT list and determined that Lewis did not qualify for disability benefits because he could still

do light duty work.  Therefore, Reliance properly used the regular occupation description of the Department of Labor's DOT list in determining the job duties of Lewis as a Laser Machine Beam Operator.

<u>Did Lewis qualify as disabled under the policy?</u>

Under the DOT definition of a Laser Machine Beam Operator, the occupation is a light work/duty occupation that requires light strength and the ability to carry 20 pounds at times, while usually having to bear 10 pounds constantly.  According to the medical report filed by Dr. Nuss, the Plaintiff's treating physician, Lewis can stand, sit or walk approximately 3-5 hours/day over the course of an 8 hour day with 2 breaks and lunch.  Lewis argues that the more important considerations in determining his disability under the policy are his inability to stand and his incapability of handling the fumes from the job.  Lewis further argues that because he cannot stand or sit for a full day he cannot do the work required under the regular occupation, and therefore should qualify as disabled under the policy.

In its Motion for Summary Judgment Reliance asserts that it could not consider the fumes complained about by Lewis because they were not included in the job description listed by the Department of Labor.   In addition, Reliance argues that the joint pain complained of by Lewis does not match the medical records of Dr. Nuss and Dr. Bilkey that state he has the capability of performing light duty work.   Reliance further argues that even though they initially approved the claim, after receiving the complete medical records from Lewis they decided that he was not totally disabled for the purposes of performing his duties.  The Defendants point out that under the policy, in order for Lewis to receive a monthly benefit he must provide proof of a total disability.  Reliance also argues that the burden in proving that he remains eligible rests on the

Plaintiff, citing the Sixth Circuit Court of Appeals case of *Miller v. Metropolitan Life Ins. Co.*, which states: "[t]herefore, Metropolitan (the administrator) did not act unreasonably in refusing to reinstate benefits or schedule a second independent examination unless plaintiff first submitted further evidence of continuing disability." *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991).  The Court in *Miller* also held that it "was not arbitrary and capricious for Metropolitan to continue to deny benefits even though plaintiff maintained that she was still disabled and requested a second independent examination because plaintiff refused to comply with the procedures set forth in the Plan and failed to provide continuing medical documentation of her disability." *Id.*  Reliance bolsters this claim by asserting that even though physicians may recognize the truth behind a claimant's pain, the administrator can still deny the claim if the Plaintiff falls short of providing evidence as to the alleged disability that would render him/her unable to work under the terms of the policy. *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 382 (6th Cir. 1996).

In the instant matter, all of the medical reports issued by the physicians who examined Lewis found that he could perform light duty work.  Further, the DOT list states that Lewis' position as a Laser Machine Beam Operator qualifies as a light duty work position.  Though Lewis claims that he has an inability to deal with the fumes that may come from his position may have some truth to them, not only does the DOT list definition not have fume exposure listed as a condition of working as a Laser Machine Beam Operator, but also none of the medical reports support the conclusion that the fumes limit his work capacity.  In addition, unlike *Miller*, here Reliance re-evaluated Lewis' claim after they initially denied him, and the Defendants still found that Lewis could perform the light duty responsibilities of his occupation.  Though the Court

sympathizes with Mr. Lewis, he has not met his burden of proving why he should receive the disability benefits under the policy, and therefore should not qualify as disabled under the policy.

Therefore, this Court finds that Reliance did not act in an arbitrary and capricious manner in denying Lewis' claim under the policy.

## *Did the Social Security Administration's decision to award benefits to Lewis bind Reliance to grant benefits to Lewis?*

In his response to Reliance's Motion for Summary Judgment, Lewis argues that Reliance should have considered the fact that the Social Security Administration granted Lewis disability benefits, and therefore erred in their decision to deny the claim.  In their motion the Defendants assert that the Social Security Administration's decision to grant benefits should not bind the decisions of ERISA claims.  Reliance states that an administrator's failure to consider a successful Social Security Disability claim did not make the denial of benefits under an ERISA claim capricious and arbitrary.

Lewis offers the case of *Darland v. Fortis Benefits Insurance Company*, where the Sixth Circuit Court of Appeals determined that the defendant administrator had failed to take into consideration the fact that the Social Security Administration ("SSA") had found the claimant totally disabled and granted him disability benefits. *Darland v. Fortis Benefits Insurance Company*, 317 F.3d 516 (6th Cir. 2003).  In another Sixth Circuit case, *Pierce v. Kentucky Utilities Company's Long Term Disability Plan*, the Court reversed the lower federal court decision and found that the administrator had acted in an arbitrary and capricious manner by not taking into account the SSA's finding to award the claimant disability.

However, in both of those cases, the administrator had specifically requested that the

10

claimant go to the SSA to file for benefits and then denied the employee's claim under ERISA. In *Darland*, the administrator had told the claimant to apply to the SSA for disability benefits in order to reduce the amount of monthly benefits under the disability plan, and after the SSA granted the claimant disability, the administrator requested a refund of the ERISA benefits and discontinued the payments. The Sixth Circuit Court of Appeals found it inconsistent and a conflict of interest for the administrator to ignore the SSA determination after having requested that the claimant seek it out in the first place then ignoring the decision of the SSA. *Darland* at 527-28. In *Pierce*, the Court also found it inconsistent for the administrator to ignore the SSA determination after the administrator required the claimant to appeal the SSA's denial of Pierce's application, which the claimant succeeded in, followed by the administrator denying the benefits to the claimant with regards to the ERISA claim. *Pierce* at 989. At the same time, the Court in *Pierce* also noted that "administrators of disability insurance plans under ERISA are not bound by decisions of the Social Security Administration...[but] in certain situations, it is inconsistent for a plan administrator to ignore the Social Security Administration's determination of the disability." *Id.* Therefore, unless ignoring the SSA decision in regards to disability benefits would be inconsistent with the actions between the claimant and administrator in determining the eligibility of the ERISA claim, the administrator does not need to consider the decision of the SSA when making its analysis.

      In the instant matter, Lewis has offered no evidence to show that ignoring the SSA decision to grant the Plaintiff benefits would be inconsistent with denying his ERISA claim. Lewis merely acknowledged that *Darland* had made such a holding and then stated that the SSA decision should have been considered by Reliance. This does not constitute an inconsistent act

11

as required by the case law of *Darland* and *Pierce*. Further, Reliance has provided Sixth Circuit Court of Appeals opinions that support the dicta from *Pierce* holding that an administrator in an ERISA claim need not take into account the decision by the SSA.

In *Whitaker v. Hartford Life and Acc. Ins. Co.*, the Sixth Circuit Court of Appeals held:

> [T]hat an ERISA plan administrator is not bound by an SSA disability determination when reviewing a claim for benefits under an ERISA plan. As the Supreme Court noted in *Nord*, entitlement to Social Security benefits is measured by a uniform set of federal criteria. But a claim for benefits under an ERISA plan often turns on the interpretation of plan terms that differ from SSA criteria.

*Whitaker v. Hartford Life and Acc. Ins. Co.*, 404 F.3d 947, 949 (6th Cir. 2005), *citing*, *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003). Based upon the above mentioned case law, as well as the fact that Lewis has not shown any inconsistencies or conflicts of interest to convince this Court that the decision of the SSA to grant him disability should have been taken into consideration by Reliance, the Defendants were not bound by the SSA decision.

Therefore, this Court finds that the Social Security Administration's decision did not bind Reliance into granting benefits to Lewis under the ERISA claim.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment is **GRANTED.**

An appropriate order shall issue.